[S. F. No. 16564.   In Bank.   Mar. 25, 1942.]

BERTHA COHN, Respondent, v. ALFRED COHN et al., Defendants; EDITH FISHER et al., Appellants.

Joseph A. Brown, O'Connor, Neubarth & Moran, Tobin & Tobin, M. L. Choynski, Milton D. Sapiro, Norman A. Eisner, Frederick W. McNulty and Joseph T. O'Connor for Appellants.

James K. Abercrombie, Gregory, Hunt & Melvin and Wallace Sheehan for Respondent.

EDMONDS, J.—After certain heirs of Charles Cohn filed a contest of his will, they entered into a contract with Levi Cohn, a brother of the deceased, by which each agreed to

accept a stated amount in settlement of his interest in the estate. Subsequently a dispute arose among the parties to the contract concerning the apportionment of the inheritance tax between them, and the respondent, as the assignee of Levi Cohn, brought this action for declaratory relief. The trial court construed the contract as an agreement upon the part of each heir to take a stated percentage of the amount remaining in the estate after the payment of all taxes, and the appeal is from the judgment rendered accordingly.

The will of Charles Cohn devised and bequeathed four-fifths of his estate to his brother, Levi Cohn. The remaining one-fifth was divided among the appellants, who are five brothers and sisters and the issue of a deceased brother and sister. Under the contract made by the heirs, the appellants agreed to accept "fifty-five (55) per cent of the estate available for distribution," the remaining "forty-five (45) per cent thereof to go to and be distributed to . . . [Levi Cohn] individually . . ." Following the execution of this contract, the will was admitted to probate, and all claims, expenses of administration, the federal estate tax and inheritance taxes were paid in full.

As the agreement of the heirs did not affect their liability for the inheritance tax, the state assessed and collected approximately $100,000 based upon the provisions of the will. Of this amount, $94,886 was charged against the interest of Levi Cohn and the balance charged ratably against the appellants. The respondent successfully contended in the trial court that, in determining the share of each of the heirs under their agreement of compromise, the tax paid upon all of the interests should be deducted from the value of the estate, and the remainder, or the amount "available for distribution" apportioned as agreed upon. The position of the appellants is that the contract makes no provision for the payment of the inheritance tax and that the interest of Levi Cohn is chargeable with four-fifths of the amount paid to the state. If this theory is correct, the appellants will pay only one-fifth of the tax although they receive 55 per cent of the estate.

Generally speaking, the state assesses the privilege of succeeding to property, and computes the tax upon the interests of the legatees or devisees and the degree of relationship, if any, to the decedent. (*Estate of Wilmerding,* 117 Cal. 281 [49 Pac. 181]; *Estate of Miller,* 184 Cal. 674 [195 Pac. 413, 16 A. L. R. 694]; *Estate of Watkinson,* 191 Cal. 591 [217

Pac. 1073] ; *Estate of Bloom,* 213 Cal. 575 [2 P. (2d) 753] ; *Estate of Rath,* 10 Cal. (2d) 399 [75 P. (2d) 509, 115 A. L. R. 836].) The tax is not one of the expenses of administration or a charge upon the general estate of the decedent; it is collectible out of each specific share or interest to which the beneficiary succeeds, and not from the general property of the estate. (*Estate of Wilmerding, supra; Estate of Kennedy,* 157 Cal. 517 [108 Pac. 280, 29 L. R. A. (NS) 428] ; *Estate of Chesney,* 1 Cal. App. 30 [81 Pac. 679] ; 24 Cal. Jur. 460.) Under the Inheritance Tax Act of 1921 (Stats. 1921, p. 1503, sec. 3; Deering's Gen. Laws, 1923, Act 8443), which was in effect at the date of Charles Cohn's death, the inheritance tax constitutes a lien upon the property passed or transferred, and executors and administrators are liable for it. By section 9 of the act, any executor or administrator having in charge any legacy or property for distribution, is directed to deduct the tax therefrom, or, if the property be not money, he is directed to collect the tax thereon from the legatee. ■ Under these sections, therefore, the personal representative of the estate is primarily liable for the payment of the tax and it is chargeable against the money and other property of the estate in his hands. However, the fact that the executor or administrator must pay the tax and is authorized to deduct the amount assessed against the distributive share of each person inheriting or succeeding to the estate does not change the nature of the tax as one upon the right to inherit. The provisions concerning collection of the tax are administrative in character; they do not fix the liability for it upon the estate. (*Hostetter* v. *United States,* 113 Fed. (2d) 64.)

■ Admittedly, the heirs and legatees of a decedent may agree among themselves as to the apportionment of the inheritance tax, but it becomes fixed at the date of death and accrues against the shares of the legatees in accordance with the terms of the will. Such an agreement does not affect the right of the state to the tax or change the basis upon which it is to be computed. (*Estate of Rossi,* 169 Cal. 148 [146 Pac. 430] ; *Estate of Holt,* 61 Cal. App. 464 [215 Pac. 124] ; *Kelso* v. *Sargent,* 11 Cal. App. (2d) 170 [54 P. (2d) 26].) And in the absence of a contrary intent clearly expressed, a contract by which the beneficiaries under a will agree to divide the estate differently than the testator provided, does not shift the responsibility for the inheritance tax. Each beneficiary must pay the amount assessed by the state upon the value of

the property devised or bequeathed to him by the will instead of upon the share which he has agreed to accept under the terms of the contract. (*Kelso* v. *Sargent, supra.*)

Although the present compromise agreement makes no reference to the inheritance tax, the contracting parties agreed to accept certain percentages of the estate ''available for distribution,'' and the controversy which has arisen centers upon the meaning of these words. The appellants contend that they simply paraphrase the language used by the testator in his will and were intended to identify the property described by him as: ''All my estate of every kind and character whatsoever and wheresoever situate and not required for the payment of funeral expenses, expenses of last illness, properly proven debts, and expenses of administration, . . .'' But thus construed, the phrase would be superfluous. The heirs could only agree upon a division of the amount remaining in the estate after the payment of all debts and expenses of administration; these deductions would have to be made regardless of any contract between them.

Terms used in a written contract are to be construed according to the ordinary and usual meaning of the language unless an intent that they should be interpreted otherwise plainly appears. (*Scudder* v. *Perce,* 159 Cal. 429 [114 Pac. 571]; *Alderson* v. *Houston,* 154 Cal. 1 [96 Pac. 884].)

An estate is ''available for distribution'' only if it is legally capable of being distributed, and under the inheritance tax laws of this state an estate is not distributable until all such taxes have been paid. Furthermore, section 1024 of the Probate Code, which superseded former section 1669 of the Code of Civil Procedure, declares that before any decree of distribution is made, the inheritance tax must be paid. (See *Estate of Cohn,* 20 Cal. App. (2d) 550 [67 P. (2d) 362].) Only when these statutory requirements have been satisfied may the estate be distributed, and the language used by the parties to the compromise agreement clearly indicates an intention to divide the amount remaining in the estate after the payment of all taxes.

The case of *Estate of Chesney, supra,* relied upon by appellants, merely holds that in determining the amount of money in the hands of an executor available for the payment of a particular legacy, the court was not required to take into consideration the amount of the inheritance tax imposed upon other bequests. Instead of being of any aid to appellants, the

decision is contrary to their position, for it implicitly recognizes that a bequest is not available for distribution until the inheritance tax levied thereon is paid.

Another factor which is entitled to consideration in construing the agreement is that if the contention of the appellants were correct and $94,886 of the tax is deducted from the interest of Levi Cohn under the will, the respondent will receive only about 30 per cent of the estate, based upon a market value of $650,000. On the other hand, if the entire tax is deducted from the value of the estate before it is apportioned among the heirs, the respondent will receive 45 per cent of the amount "available for distribution." Where one construction would make a contract unreasonable or unfair, and another construction, equally consistent with the language, would make it reasonable, fair and just, the latter construction is the one which must be adopted. (*Stein* v. *Archibald*, 151 Cal. 220 [90 Pac. 536]; *Yeremian* v. *Turlock etc. Co., Inc.*, 30 Cal. App. (2d) 92 [85 P. (2d) 515].)

The appellants complain that the trial court committed prejudicial error in rejecting certain documents which they offered in evidence. By these documents, it is asserted, the respondent admitted that she was obligated to pay the tax assessed upon the 80 per cent interest of Levi Cohn, and they should have been received in evidence as conduct upon the part of the respondent consistent only with a construction of the compromise agreement contrary to that now advanced by her.

The documents, however, do not support the appellants' statements concerning them. In the first of them, which is entitled, "Objections of Bertha Cohn to Confirmation of the Report of the Inheritance Tax Appraiser and to the Fixing of the Inheritance Taxes in Accordance Therewith, and Petition for Adjudicating said Tax," the respondent claimed that the inheritance tax should be based upon the interests allocated by the settlement and that she is liable only for 45 per cent of the tax. This pleading is in accord with her present position.

The second document is a stipulation entered into between the attorneys for the respondent and those representing the state controller by which the amount of the inheritance tax was levied upon the interests of the legatees as set forth in the will. This stipulation may not be construed as an admission that the respondent is liable for 80 per cent of the tax. She had previously objected to the basis upon which the in-

heritance tax was levied, and the stipulation was intended only as an agreement establishing the total tax to be paid to the state by the executor. Neither the compromise agreement nor the manner in which the tax should be ultimately charged to the respective parties in interest was in any way involved.

The final document is a petition by the respondent for partial distribution of the estate. This was filed in 1935. In it, the respondent asked that the court order the executor to deliver 45 per cent of the estate to her. No mention whatsoever is made of inheritance taxes being charged against her share of the partitioned property. As none of the three documents shows any material fact sought to be established by the appellants, they were properly excluded from evidence.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Houser, J., Carter, J., and Traynor, J., concurred.